

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2001 JAN 23 PM 3: 53

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SPORTS INNOVATIONS, LTD. | * | CIVIL ACTION |
| *Plaintiff* | * | No. 00-3272 |
| VERSUS | * | JUDGE: PORTEOUS |
| SPECIALIZED BICYCLE COMPONENTS, INC. | * | MAGISTRATE: ROBY |
| *Defendant* | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER**

**LEMLE & KELLEHER, L.L.P.**

GEORGE FRAZIER, Bar No. 5836(T.A.)
601 Poydras Street
21st Floor Pan American Life Center
New Orleans, LA 70130
Telephone: (504) 586-1241
Attorneys for Sports Innovations, Ltd.

Fee
Process
Dktd OLO
CtRmDep
Doc.No. 8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SPORTS INNOVATIONS, LTD. | * | CIVIL ACTION |
| *Plaintiff* | * | No. 00-3272 |
| VERSUS | * | JUDGE: PORTEOUS |
| SPECIALIZED BICYCLE COMPONENTS, INC. | * | MAGISTRATE: ROBY |
| *Defendant* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER

**LEMLE & KELLEHER, L.L.P.**

GEORGE FRAZIER, Bar No. 5836(T.A.)
601 Poydras Street
21st Floor Pan American Life Center
New Orleans, LA 70130
Telephone: (504) 586-1241
Attorneys for Sports Innovations, Ltd.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

1. INTRODUCTION..................................................................... 1

II. THE PARTIES AND THE PRODUCTS ............................................ 3

    *A.* Sports Innovations ........................................................... 3

    *B.* Specialized Bicycles Components .......................................... 4

III. THE MOTION AND THE RELEVANT RULES OF DECISION ...................... 6

IV. THE CALIFORNIA CASE IS A SHAM ........................................ 12

    *A.*   Trademark Infringement ................................................. 13

        *(i)*   *type of trademark allegedly infringed* ............................... 14
        *(ii)*  *similarity of marks* .............................................. 15
        *(iii)* *similarity of products and services* ............................. 15
        *(iv)* *identity of retail outlets and purchasers* ....................... 15
        *(v)*  *identity of advertising media* ................................... 15
        *(vi)* *defendant's intent*.............................................. 16
        *(vii)* *evidence of actual confusion*.................................... 16

    **B.**   **Dilution** .............................................................. 16

    **C.**   **Unfair Competition** .................................................. 19

    **D.**   **California Law** ....................................................... 19

        *(i) Dilution*........................................................... 20
        *(ii) Unfair Competition and Deceptive Trade Practices* ................ 20

V. THERE WERE NO NEGOTIATIONS ........................................ 21

VI. CONCLUSION.................................................................. 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440 (9th Cir. 1980) .............14
*American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*,
949 F.2d 1384 (5th Cir. 1991) ................................................................................................20
*Amstar Corp. v. Dominos Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. denied,*
449 U.S. 899  (1980)..........................................................................................................14, 19
*Boston Professional Hockey Association, Inc. v. Dallas Cap &  Emblem Manufacturing, Inc.*,
510 F.2d 1004 (5th Cir.), *cert. denied*, 423 U.S. 868 (1975) .........................................13
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................3
*Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800 (N.D. Cal. 1987)............................13
*Coastal Towing, Inc. v. Thomas*, No. 96-2596 (E. D. La. Sept. 1997) [1997 WL 598474]............7
*Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998) ..........................14, 15, 16
*Excel Music, Inc. v. Simone*, No. 95-3626 (E.D. La. Jan. 5, 1996)
[1996 WL 5708]............................................................................................................8
*Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336 (5th Cir. 1984) ......................16
*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
12 F.Supp.2d 1068 (C.D. Cal. 1998) ..........................................................................21
*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1954)........................................11
*Haydon Switch & Instrument, Inc. v. Rexnord, Inc.*, No. N86-190
(D. Conn. June 4, 1987)  [1987 WL 26062] ..........................................................................13
*Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 63 Cal.Rptr.2d 118 (1997) .................21
*I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27 (1st Cir. 1998) ........................................18
*Jeld-Wen, Inc. v. Dalco Industries, Inc.*, No. 99-100 (8th Cir. June 15, 1999)
[1999 WL 1024002] ...............................................................................................24
*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952).....................7
*Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971) ........................6
*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d. 216 (5th Cir. 1998) ........................9
*Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454 (S.D. Fla. 1998) ............18
*Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983) ..................10, 11
*Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, (2nd Cir. 1978)
(*per curiam*), *cert. denied*,  439 U.S. 1116 (1979)..........................................................5
*Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985)......................24
*Pacific Employers Insurance Co. v. M/V CAPTAIN W. D. CARGILL*, 751 F.2d 801
(5th Cir.), *cert. denied*, 474 U.S. 1909 (1985)  ...............................................................9, 10
*Panavision International L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ....................................20
*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526 (5th Cir. 1998) ...................................13
*Rowan Cos. v. Ainsworth*, 5 F.Supp.2d 420 (W.D. La. 1998)........................................8, 12
*S Industries, Inc. v. Diamond Multimedia Systems, Inc.*, 17 F.Supp.2d 775 (N.D. Ill. 1998) .........8
*Sheffield Insurance Co. v. River Products, Inc.*, 958 F. Supp. 270 (E.D. La. 1997) ......................8
*Sun Bank v. Sun Federal Savings & Loan*, 651 F.2d 311(5th Cir. 1981) ..............................15
*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
815 F. Supp. 994 (E.D. Tex. 1992) ...............................................................9, 12, 13

*Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774 (5th Cir. 1993) ........................................................................................................................7

*Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F. Supp.2d 488 (E.D. Va. 1999) ..............................................................................17

*West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985)............6

*White v. Samsun Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993) .........................................................................14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1979) ....................................11

## FEDERAL STATUTES

15 U.S.C., §1114(1) ......................................................................................................13

15 U.S.C. §1125 (c)(1)..................................................................................................18

15 U.S.C. §1125(c)(1)(A)-(H) ......................................................................................17

28 U.S.C. §1333 ..............................................................................................................7

Lanham Act §43(c) ........................................................................................................16

## STATE STATUTES

California Business & Professions Code §§ 17200 *et seq.*, ........................................20

La. R.S. 51:1405A ........................................................................................................21

La. R.S. 51:1409A ........................................................................................................21

## RULES

Federal Rule of Civil Procedure 23(c) ........................................................................12

Federal Rule of Evidence 201(b)(2) ............................................................................12

## TREATISES

3 J. McCARTHY, McCARTHY ON TRADEMARKS & UNFAIR COMPETITION §24:80 (4th ed. 1997)..................................................................................................17

3 J. McCARTHY, McCARTHY ON TRADEMARKS & UNFAIR COMPETITION §24:91 (4th ed. 1997)..................................................................................................18

10B C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE §2758 (3d. ed., 1998) ..............................................................................6

## MISCELLANEOUS

JUDICIAL BUSINESS OF THE UNITED STATES COURTS, 1999 Annual Report of the Director, Appendix, Table C-10 ..........................................................................11

Trademark Acceptable Identification of Goods Manual (United States Patent and Trademark Office) ........................................................................................................................6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SPORTS INNOVATIONS, LTD. | * | CIVIL ACTION |
| *Plaintiff* * | | No. 00-3272 |
| VERSUS | * | JUDGE: PORTEOUS |
| SPECIALIZED BICYCLE COMPONENTS, INC. | * | MAGISTRATE: ROBY |
| *Defendant* * | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER</u>

**MAY IT PLEASE THE COURT:**

This Memorandum is submitted by Plaintiff Sports Innovations, Ltd. ("Sports Innovations") in opposition to the Motion to Transfer or Dismiss filed by Defendant Specialized Bicycle Components, Inc. ("Specialized Bicycle Components").

## 1. INTRODUCTION

This is an extraordinary motion. Specialized Bicycle Components asks the Court to dismiss this case or transfer it to the Northern District of California so Specialized Bicycle Components may pursue its claims that it has been damaged because (a) bicyclists have been or are likely to be confused into purchasing the *AQUALift* -- a

patented machine costing $800.00 and weighing 64 pounds -- instead of a lightweight water bottle costing around $20.00, and (b) the value of its trademark for water bottles is being diluted or tarnished by association with a machine sold -- not to bicyclists -- but to football franchises such as the San Francisco 49ers, the New Orleans Saints, and the Dallas Cowboys, as well as almost all ranked college football teams. The claims in the California suit are silly for several reasons, among them: *First*, Specialized Bicycle Components does not even allege that it used its trademark on water bottles before Sports Innovations adopted its supposedly infringing trade name. This ignores one of the basic precepts of federal and state trademark laws: it is the first, or senior, user of a trademark that is entitled to prevent second, or junior, users of the same or confusingly similar marks to the injury of the senior user. Consequently, no count in the California Complaint states a claim upon which relief may be granted. *Second*, Specialized Bicycle Components has no federal registration for a trademark on water bottles, but is nonetheless trying to prevent Sports Innovations from using its own trade name on its own patented product. That Specialized Bicycle Components' federal registrations do not cover water bottles is clear from the Certificates attached to the California Complaint. Consideration of the Certificates on a motion to dismiss under Rule 12(b)(6) is proper. It is another reason why the California Complaint fails to state a claim. *Third*, Specialized Bicycle Components and Sports Innovations market and sell their products to entirely distinct groups of customers: bicyclists on the one hand and professional and college sport teams on the other. There is thus no possibility of consumer confusion about the products or their origins.

2

The demand that Sports Innovations either surrender its trade name without compensation or face protracted litigation in California borders on extortion.  Sports Innovations believes the matter ought to be resolved on an expedited basis in this Court. Indeed, Sports Innovations submits that the Court could and should grant summary judgment *sua sponte* in the near future, as the Court has the "widely acknowledged" power to do.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986).

Specialized Bicycle Components' Motion is addressed to the Court's discretion. Sports Innovations will summarize the case and the considerations that militate against exercising that discretion to compel Sports Innovations to proceed in California.

## II. THE PARTIES AND THE PRODUCTS

All facts concerning Sports Innovations and the ***AQUALift*** are supported by the Declaration of the owner and inventor.[1]  All facts concerning Specialized Bicycle Components and its trademarks are taken from materials obtained from Specialized Bicycle Components or maintained or published by the United States Patent and Trademark Office.[2]

**A.** Sports Innovations is a Louisiana corporation with its only office in Jefferson Parish.  It sells directly and through 5 distributors.  It has no office, distributor, agent, or employee in the Northern District of California (or in the State of California, for that matter).  It advertises in its distributors' catalogues, in trade journals, and on a web site. Sales can not be made through the web sit.

---

[1]    *See* Declaration of Michael A. Roppolo III.  The Declaration is attached as Exhibit "A".

[2]    *See* Declaration of George Frazier.  The Declaration and relevant Patent and Trademark Office materials are attached as Exhibit "B".

Sports Innovations sells a patented portable drinking system under the trademark "*AQUALift*". Sports Innovations made its first sale in June of 1989 and obtained its United States Patent for the *AQUALift* system on October 13, 1992. The *AQUALift* is sold to football and soccer teams, including every team in the National Football League except the Buffalo Bills and every college team in a significant Bowl this year -- Oklahoma, Florida State, Florida, Miami, Oregon, Oregon State, Purdue, Texas, LSU, Auburn, Tennessee, Wisconsin, UCLA, Kansas State, Texas A&M, Virginia Tech, and Michigan. The *AQUALift* weighs 64 pounds and has a suggested price of $800.00. Sports Innovations uses a stylized "SI" for its trade name. This "SI" logo is not used as a trademark. The logo has not appeared on *AQUALift* machines since the 1999 football season, but is limited to stationery and advertising media such as catalogs, brochures, and a web page. The only even arguably prominent use of the "SI" logo is in the introduction to Sports Innovations' web site. Sports Innovations developed the logo in 1991 using a common computer program. Its choice of logo was in no way influenced by any trademark belonging to or used by Specialized Bicycle Components.[3]

*B*. Specialized Bicycles Components is a California corporation with its principal place of business in that State. It has franchises across the country (several are in this District), and makes sales through those franchises and its web site. Specialized Bicycle Components is, as its name suggests, a marketer of bicycles and accessories. It has registered a stylized "S" with the United States Patent and Trademark Office as a trademark for two different sets of goods. The first trademark was obtained on November 8, 1983 for "bicycle frames", goods in International Class 12. The second

---

[3]     Declaration of Michael A. Roppolo III ¶¶16-69.

trademark was registered on December 6, 1988 for "bicyclists' shoes and clothings, namely shorts, socks, and jerseys", goods in International Class 25.[4]  Specialized Bicycle Components has not registered a trademark for water bottles.  Water bottles can not be encompassed within either trademark Specialized Bicycles Components has registered with the federal government for two reasons:  *First*, neither Certificate of Registration list water bottles, and a trademark registration covers only those goods listed in the Certificate.  *E.g.*, *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 48 (2d Cir. 1978) (*per curiam*), *cert. denied*, 439 U.S. 1116 (1979).  *Second*, water bottles can not be included among the goods listed in the Certificates by any process of implication.  Water bottles are neither bicycle frames nor bicyclists' shoes and clothing.  Indeed, water bottles are in neither International Class 12 nor International Class 25.  They are in International Class 21.  *See* Trademark Acceptable Identification of Goods Manual, at 20 (United States Patent and Trademark Office).[5]  Accordingly, Specialized Bicycle Components could obtain a Certificate of Registration for water bottles only by filing a separate Application.  Furthermore, there is no allegation that Specialized Bicycle Components sold water bottles before Sports Innovations marketed *AQUALift*.  Indeed, Specialized Bicycle Components represented to the United States Patent & Trademark Office in 1994 that the goods sold under Registration No. 1,515,498 continued to be "bicyclist's shoes, and clothing, namely shorts, socks, and jerseys".  *See* Declaration of Use executed January 19, 1994.[6]  Consequently, Specialized Bicycle Components has priority of neither use nor registration.

---

[4]      Declaration of George Frazier, Items 2 & 3.
[5]      *See* Declaration of George Frazier, Item 4.
[6]      Declaration of George Frazier, Item 2, at 11.

### III.  THE MOTION AND THE RELEVANT RULES OF DECISION

Specialized Bicycle Components selectively (and misleadingly) cites a number of cases for the proposition that the law of this Circuit favors dismissal or transfer of Sports Innovations' suit.  Specialized Bicycles Components asks the Court to transfer or dismiss the case before it as improper forum shopping because (a) there is pending in the Northern District of California a lawsuit in which the matters in controversy may be fully litigated and (b) suit was filed in New Orleans even though the parties were in the midst of negotiations.  Even assuming that the supporting arguments advanced by Specialized Bicycle Components are well founded, the relief requested is a matter for the Court's discretion.  The Court's exercise of that discretion ought to be informed by the most recent rulings in this Circuit, the equities, the legal and factual weakness of Specialized Bicycle Component's position, and the incompleteness or inaccuracy of much of the authority presented by Specialized Bicycle Components.

There is no dispute that the Fifth Circuit follows the "first-to-file" rule, according to which "the court initially seized of the controversy should be the one to decide whether it will try the case."  *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).  That court should also be permitted to adjudicate the controversy fully.  *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).  Although a plaintiff's choice of forum is entitled to a great degree of deference, whether to grant declaratory relief is always within a court's discretion.  *See* 10B C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE §2758 (3d. Ed., 1998) (collecting cases).  As a general proposition:

> The manufacturer who was charged with infringing a patent can not stretch the Declaratory Judgment's Act to give him a paramount right

> to chose the forum for trying out questions of infringement and validity. ***He is given an equal start in the race to the courthouse, not a head start***. If he is forehanded, subsequent suits against him by the patentee can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit, and a judgment in his favor bars suits against his customers. If he is anticipated, the court's discretion is broad enough to protect him from harassment of his customers.

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185-86 (1952) (emphasis added).

An equal start is all Sports Innovations asks. Its request should be evaluated in light of considerations recently summarized by the Court of Appeals:

> The relevant factors which the district court must consider include, but are not limited to, 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient form for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purpose of judicial economy.

*Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993) (citations omitted).

The Court of Appeals has stated on more than one occasion that a district court abuses his discretion if "it fails to address and balance the relevant principles and factors of the doctrine." *See Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d at 779 n.14.

In this District, the result of employing the 6-factor test is often inevitable because the party moving to dismiss the declaratory judgment action is claiming a statutory right to have his Jones Act claim heard in state court under the "Saving-to-Suitors" clause of 28 U.S.C. §1333. *E.g., Coastal Towing, Inc. v. Thomas*, No. 96-2596 (E.D. La. Sept. 25,

1997) [1997 WL 598474] (granting seaman's motion to dismiss first-filed declaratory judgment action); *Sheffield Insurance Co. v. River Products, Inc.*, 958 F. Supp. 270 (E. D. La. 1997) (granting seaman's motion to dismiss second-filed declaratory judgment action); *see Excel Music, Inc. v. Simone*, No. 95-3626 (E.D. La. Jan. 5, 1996) [1996 WL 5708, * 7 n.7] (declaratory judgment action dismissed so that suit to enforce injunction previously obtained in the Northern District of California might proceed there).

This is not always the case, even in contests between the saving-to-suitors clause and a plaintiff's choice of forum in which to request declaratory relief. In *Rowan Cos. v. Ainsworth*, 5 F.Supp. 2d 420, 422-23 (W.D. La. 1998), for example, Judge Little found the 6 factors warranted denying a seaman's motion to dismiss a declaratory judgment action in the interest of fairness and judicial economy. Sports Innovations submits a similar result ought to follow here.

Applying the factors to this case yields the following analysis:

*1. Is there a pending action in which everything may be litigated:* Whether there is a pending lawsuit in which the matters in controversy may be fully litigated requires, at a minimum, that any pending suit assert at least colorably legitimate claims. That is not the case here. As will be shown, many of the allegations in the action filed in California are wrong or frivolous and much of the relief sought is unavailable. The California case is little more than what has been characterized as "judicial extortion." *See S Industries, Inc. v. Diamond Multimedia Systems, Inc.*, 17 F.Supp.2d 775, 779 (N.D. Ill. 1998).

*2. Is this suit anticipatory:* This suit most assuredly does not anticipate a legitimate attempt to enforce rights or redress injury. One of the reasons given for making an exception to the first-filed rule is "the general policy that the party whose rights are being

infringed should have the privilege of electing where to enforce its rights." *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex 1992). But this policy has no application here, for Specialized Bicycle Components has not been injured by infringement or otherwise.

**3.  *Does this suit constitute forum shopping:*** The mere fact that declaratory relief is sought in anticipation of later suits does not mean forum shopping was present. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218-19 (5th Cir. 1998) (no forum shopping even though declaratory judgment unquestionably brought in anticipation of state suit).  There is no forum shopping here, as that phrase is normally understood.  The essential law at issue is the Lanham Act, federal statutes whose enforcement does not differ markedly from Circuit to Circuit. In any event, one of the cases cited by Specialized Bicycle Components in its Motion makes the point nicely:

> In reality, every litigant who files a lawsuit engages in forum shopping when he chooses a place to file suit.  The Court is concerned only with whether the choice of forum is a proper one under the law, and not with the motives of the parties selecting the forum.

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. at 996.

Two other cases cited by Specialized Bicycle Components illustrate the sort of behavior found to constitute forum shopping in this Circuit.

*Pacific Employers Insurance Co. v. M/V CAPTAIN W. D. CARGILL*, 751 F.2[nd] 801 (5th Cir.), *cert. denied*, 474 U.S. 1909 (1985), involved who would pay how much for damage caused by a ship in the Mississippi River.  The insurer of the cargo brought suit in this District for a declaratory judgment absolving it of any contribution.  A little more than a month later, the ship's insurer sued in Belgium to collect that contribution, and then moved to dismiss the declaratory

judgment action pending in New Orleans. The district court granted the motion, and the Fifth Circuit found no abuse of discretion, emphasizing that (i) the district court had concluded the cargo insurer's unexplained delay in serving the ship's insurer until after suit was filed in Belgium indicated an abuse of judicial procedure, and (ii) the cargo insurer had contractually stepped into the shoes of the foreign cargo owner, and was thus not entitled to the preference given to United States citizens for a home forum. 751 F. 2d at 803-05.

*Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983), is similarly instructive. There, insurer and insured negotiated over the extent of coverage of a large inventory loss. The insurer filed suit in Texas for a declaration limiting its coverage. The insured filed a breach-of-contract suit in California state court shortly thereafter, and moved to dismiss the declaratory judgment action. The district court granted the motion, and the Court of Appeals affirmed, calling particular attention to the insurer's misconduct:

> Plaintiff caused Defendant to delay filing suit in California by representing the Plaintiff was considering the merits of the claim and by allowing an extension of the one-year limitation period. But for these representations and implications, Defendant would have been the first to file an action presenting the same issues (plus a few more), and the forum for trial of the issues presented in this suit would have been in California.

706 F.2d at 601.

The Court of Appeals also noted the legal benefits the insurer sought to gain by suing in Texas:

> There are indications that forum-shopping was an element in this case. Mission states that the burden of proof in regard to the loss may differ in California and Texas, an important fact in this case since even proving that the thefts occurred may require resort to complicated accounting analyses.

706 F.2d at 602 n.3

> There is no suggestion of any such misbehavior here.

**4. Is the court a convenient forum:**   Sports Innovations is a local company with its only office located in this District.  It makes sales directly and through 5 distributors.  It has no offices, agents, employees, or distributors anywhere near the Northern District of California.  Specialized Bicycle Components, on the other hand, has several franchises in this District and a web site through which sales may be made in this District.  Accordingly, the Court unquestionably has jurisdiction over Specialized Bicycle Components.  It is not at all clear, however, that Sports Innovations is subject to the jurisdiction of the California courts.  *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1979); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1954).  The convenience of parties and witnesses is otherwise not at issue.  Sports Innovations has no interest in compelling attendance of witnesses outside this District.  Documentary discovery will be conducted by mail, as is usually the case.  Although this is primarily a paper case, most of the paper is found in law books.

**5.   Would retaining the lawsuit be in the interest of judicial economy:**  Two reasons indicate this Court is the preferable forum.  *First,* a civil case filed in the Eastern District of Louisiana is resolved about 50% sooner than it takes to conclude a civil case in the Northern District of California.  According to the latest available official statistics, the median time in which civil cases pend is 17 months here and 24 months in the Northern District of California.[7]  *Second,* the case before the Court is intentionally drafted for quick and uncomplicated resolution.  It can be decided on motion within a matter of

---

[7]   *See* Declaration of George Frazier, Item 5.

months.  If Specialized Bicycle Components wishes to assert its California claims here -- as it arguably must under Rule 13(c) — what remains of the case may be resolved after issuing declaratory relief.

As one of the cases cited by Specialized Bicycle Components points out, lessening the length of litigation is in and of itself a "compelling argument" in deciding a motion such as the one before the Court.  *Texas Instruments, Inc. v. Micron Semiconductor, Inc.,* 815 F. Supp. at 998-99; *see Rowan Cos. v. Ainsworth,* 5 F. Supp. 2d. at 423.  Sports Innovations believes that considerations of judicial economy militate heavily in favor of retaining the case.

**6.  *Are there possible inequities:***    There is most assuredly no unfairness in allowing Sports Innovations to have a quick and [relatively] inexpensive resolution of this dispute. There is no jurisdiction issue here, dockets are less congested, legal fees are lower,[8]  this case is less complex than that pending in California, and it involves no issues of fact. Conversely, the California case is more harassment than request for relief.

### IV.  THE CALIFORNIA CASE IS A SHAM

In its California action, Specialized Bicycle Components claims that Sports Innovations' marketing and sale of the ***AQUALift*** constitute (a) trademark infringement, (b) dilution, and (c) unfair competition under federal law, and (d) trademark dilution and unfair competition under California law.  Simply put, the suit is a sham, a filing without legal or factual basis.

---

[8]    This is unlikely to be disputed and is in any event the sort of fact of which the Court may appropriately take judicial notice.  *See* Federal Rule of Evidence 201(b)(2).

### A.    *Trademark Infringement*

The Lanham Act specifies that infringement of a trademark is not actionable under federal law unless the trademark has been registered with the United States Patent and Trademark Office.  *E.g.,* 15 U.S.C, §1114(1); *see Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004, 1008 (5th Cir.), *cert. denied*, 423 U.S. 868 (1975).  Specialized Bicycle Components has no federally registered trademark for water bottles.  The Registrations it does have will simply not extend so far.  *E.g., Haydon Switch & Instrument, Inc. v. Rexnord, Inc.*, No. N86-190 (D. Conn. June 4, 1987) [1987 WL 26062, * 9].  There is, of course, always the argument — often advanced and occasionally accepted -- that a trademark registration protects not just what is listed in the Certificate, but also prohibits use of the mark "on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner...."  *Charles Schwab & Co. v. Hibernia Bank,* 665 F.Supp. 800, 804 (N.D. Cal. 1987).  The inquiry then becomes whether it is reasonable to assume a manufacturer of bicycle frames and shoes also produces a 65-pound drinking system sold to football teams.  To state the proposition is to rebut it.

But that is only one of the defects in this claim.  The essential element of trademark infringement is customer confusion.  *E.g., Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 536  (5th Cir. 1998).  The goods sold by Sports Innovations and Specialized Bicycle Components could hardly be more dissimilar.  Specialized Bicycle Components is claiming confusion between its lightweight water bottle costing about $20.00 intended for use by bicyclists and Sports Innovations' patented portable water transportation

system weighing 64 pounds, costing $800.00, and sold to all but one NFL and almost all Division I football teams. There is no possibility — let alone likelihood — of confusion under the criteria employed in any Circuit, and certainly not in the Fifth or Ninth Circuits. *E.g., Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188 (5th Cir. 1998); *White v. Samsun Electronics America, Inc.,* 971 F.2d 1395 (9th Cir. 1992), *cert. denied,* 508 U.S. 951 (1993); *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440 (9th Cir. 1980). The most recent thorough analysis of the likelihood of confusion in this Circuit was in *Elvis Presley Enterprises.* There, the Court of Appeals discussed the standards for judging confusion — known in this Circuit as the "digits of confusion". The digits are as follows:

> (i)    ***type of trademark allegedly infringed:*** "The type of trademark refers to the strength of the mark.... The stronger the mark, the greater the protection it receives....*" Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d at 201. This mark is particularly weak. Little originality, cleverness, or whimsy is evinced by the selection of a stylized "S" to signify products produced by a company bearing a name beginning with that letter. More importantly, any distinctiveness that Specialized Bicycle Components' mark might otherwise enjoy is destroyed by the existence of over 2,000 federal trademark Registrations and Applications for "S" marks with or without designs. [9]*See Amstar Corp. v. Dominos Pizza, Inc.*, 615 F.2d 252, 259-260 (5th Cir.), *cert. denied,* 449 U.S. 899 (1980) (72 third-party registration weaken a mark so that it is entitled to no protection beyond the use to which it is already put).

---

[9]    A list is contained in Item 8 to the Declaration of George Frazier.

*(ii)     similarity of marks:*  This consideration must be looked at in "the context of use." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d at 201.  A stylized "S" trademark used on inexpensive, lightweight water bottles marketed to bicyclists has very little in common with a stylized "SI" logo that does not appear on products but is used solely to indicate a manufacturer's trade name in advertising materials.  *See Sun Bank v. Sun Federal Savings & Loan*, 651 F.2d 311, 317-18 (5th Cir. 1981) (presence of "Sun" in both marks did not render them similar considering "total effect of the designation").

*(iii)     similarity of products and services*:  "The greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d at 202.  There is, simply put, no similarity between an inexpensive, lightweight plastic water bottle designed to be used while bicycling and a heavy machine costing and weighing 30 or 40 times as much that is marketed and sold to athletic teams, departments, and franchises.

*(iv) identity of retail outlets and purchasers:*  Athletic teams engaged in serious competition are hardly in the same market as recreational bicyclists.  Indeed, it would be impossible for bicyclists to use the *AQUALift*, except perhaps at rest stops.  Moreover, the parties' retail outlets have nothing in common. Sports Innovations sells directly and through distributors of athletic goods.  Specialized Bicycle Components, on the other hand, sells through its web site and through franchisees — outlets that carry only bicycling equipment and accessories.

*(v) identity of advertising media:*  Sports Innovations advertises through its web site and the catalogs of its distributors.  The former sells only the *AQUALift* and the only bicycles sold by the latter are stationary.  Specialized Bicycle Components advertises

through its web site and catalogs of its franchisees.  Neither sells anything but bicycle equipment and accessories.

(vi)    *defendant's intent:*  According to *Elvis Presley Enterprises,* this digit is a "non-factor" if a defendant is in good faith.  141 F.3d at 203.  What possible evidence of bad faith is there?  Specialized Bicycle Components has no federal registration covering the use of a stylized "S" on water bottles, a stylized "S" is a relatively common mark, and there is no indication that Specialized Bicycle Components used an unregistered trademark on water bottles before Sports Innovations adopted its trade name.  Most significantly, there is no possibility that Sports Innovations sought to trade on the goodwill of Specialized Bicycle Components or pass its products off as those of Specialized Bicycle Components.  Sports Innovations could not have done so even if it wished to, given the absolute dissimilarity of products and customers.

(vii)  *evidence of actual confusion:*  There is and can be no evidence of actual confusion.  Even if this were not self-evident, the concurrent use of trademarks over a substantial length of time (here, about a decade) without actual confusion strongly suggests that there is no likelihood of confusion, and thus no infringement.  *See Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.,* 725 F.2d 336 (5th Cir. 1984).

Specialized Bicycle Components has no colorable claim of trademark infringement.

**B.    *Dilution***

The Lanham Act provides in §43(c) that:

> The owner of a ***famous*** mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a

mark or trade name, if such use begins **after** the mark has become famous and causes **dilution of the distinctive quality** of the mark....

15 U.S.C. §1125 (c)(1)(emphasis added).

The most authoritative commentator in the field has written that a *prima facie* case for dilution requires the plaintiff to **plead** and prove (i) plaintiff is the owner of a famous mark, (ii) defendant began using the mark **after** plaintiff's mark became famous, and (iii) defendant's use lessens the capacity of plaintiff's mark to identify and distinguish goods or services. 3 J. McCARTHY, McCARTHY ON TRADEMARKS & UNFAIR COMPETITION §24:80 (4th ed. 1997); *see, e.g., Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp. 2nd 488, 502 (E.D. Va. 1999).

Specialized Bicycle Components has not even plead that its "S" mark was famous in 1991, and thus it has failed to state a claim for dilution. Even aside from that default, suffice it to say that Specialized Bicycle Components' "S" mark fails to qualify as famous under any analysis. The eight factors the Lanham Act specifies for a court's consideration are these:

> (A)    the degree of inherent or acquired distinctiveness of the mark;
> (B)    the duration and extent of the use of the mark in connection with the goods or services with which the mark is used;
> (C)    the duration and extent of advertising and publicity of the mark;
> (D)    the geographical extent of the trading area in which the mark is used;
> (E)    the channels of trade for the goods or services with which the mark is used;
> (F)    the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
> (G)    the nature and extent of use of the same or similar marks by third parties; and
> (H)    whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register [of the Act of 1946].

15 U.S.C. §1125(c)(1)(A)-(H).

A stylized "S" has no inherent distinctiveness; it has not been used for any appreciable time in connection with the relevant goods, it is traded in channels wholly different from those employed to distribute the *AQUALift*; the only federal registrations are limited to bicycle frames, shoes, and clothing, there has been extensive third-party use of the mark, and Specialized Bicycle Components has failed to provide any suggestion why consumers associate *this* stylized "S" with its goods, as it self-evidently must.

The Court should keep in mind that a famous mark is one that is "truly distinctive and renowned." *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 45 (1st Cir. 1998). McCarthy notes that the mere acquisition of secondary meaning (or "acquired distinctiveness") is "nowhere near sufficient" to achieve the status of a "famous" mark. *See* 3 J. McCARTHY, McCARTHY ON TRADEMARKS & UNFAIR COMPETITION §24:91 (4th ed. 1997). Accordingly, a famous mark "must clearly be more than just distinctive in a trademark sense, and must rise to the level of 'Buick' or 'Kodak'." *Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F.Supp. 1454, 1463 (S.D. Fla. 1998).

Placing Specialized Bicycle Components' stylized "S" mark in the company of famous mark such as IBM, Marlboro, Microsoft, or Tabasco is ludicrous.

Similarly, the notion that Specialized Bicycle Components' mark is somehow eroded or tarnished by association with Sports Innovations' trade name is, if anything, the reverse of the case. Sports Innovations' product is patented, extremely well thought of, and associated with one of the most powerful promotional symbols around -- the NFL.

Sports Innovations has never been sued by a customer, and *AQUALift* purchasers have evidenced nothing but satisfaction.[10]  Specialized Bicycle Components, on the other hand, has been involved in at least 9 lawsuits.[11]

## C.      Unfair Competition

The insubstantiality of Specialized Bicycle Components' case is apparent from its claim:  a company has lost sales of plastic water bottles because bicyclists have been confused into purchasing a machine weighing 64 pounds and costing $800.00 instead of a $20.00 bottle.  But these are the damages that Specialized Bicycle Components seeks in its California case. Complaint, Prayer ¶¶6 & 8. Furthermore, Specialized Bicycle Components asks for an injunction prohibiting Sports Innovations from "unfairly competing" with it. Complaint, Prayer ¶1(C).  The notion that water bottles somehow compete with the *ACQUALift* has no basis in law, logic, or common sense.  It would seem beyond dispute that Specialized Bicycle Components and Sports Innovations have no actual or potential customers in common.

The considerations used to determine the likelihood of confusion in trademark infringement cases are also applicable to federal and common-law claims of unfair competition. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert., denied,* 449 U.S. 899 (1980).  Sports Innovations has already demonstrated that confusion is more than a little unlikely.

## D.   California Law

There can be little question that the claims under California law were asserted in an attempt to differentiate the Complaints pending here and in San Jose and suggest that

---

[10]       Declaration of Michael A. Roppolo III ¶¶ 64-65 &  Item 8.

the California case sought relief unavailable from this Court. This is not borne out by an analysis of what Specialized Bicycle Components claims in California.

(i) **Dilution:** The allegation of dilution under California law has no more merit than its federal counterpart. Dilution under California law "is subject to the same analysis as a [a] federal claim. *Panavision International L.P. v. Toeppen*, 141 F.3d 1316, 1326 (9th Cir. 1998). Consequently, Specialized Bicycle Components must show that (i) its mark is famous; (ii) Sports Innovations is using the mark commercially; (iii) the mark became famous before Sports Innovations began using it; and (iv) Sports Innovations' use of the mark diminishes its capacity to identify and distinguish goods and services. *See Panavision International L.P. v. Toeppen*, 141 F.3d at 1326.

This is a showing Specialized Bicycle Components can not make for the reasons given above.

(ii) **Unfair Competition and Deceptive Trade Practices:** This count arises under California Business & Professions Code §§ 17200 *et seq.,* enactments narrower in scope than their Louisiana counterpart, which essentially allows recovery for anything the finder of fact believes to be oppressive, immoral, unscrupulous. *E.g., American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1391 (5th Cir. 1991). La. R.S. 51:1405A & 1409A. The California Business & Professions Code provides in §17200 that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice...." The standard construction of this language is as follows:

> An unlawful business activity includes anything that can properly
> be called a business practice and at the same time is forbidden by law.

---

[11]    A PACER printout is attached to the Declaration of George Frazier as Item 6.

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.,* 12 F. Supp. 2nd 1068, 1079 (C.D. Cal. 1998) *quoting Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499, 519, 63 Cal. Rptr. 2nd 118, 130 (1997).

Sports Innovations believes it has adequately demonstrated above that nothing in the California Complaint is forbidden or actionable under any law pleaded.  This count is no more than an *ipse dixit*.  One does not state a claim merely by repeating something over and over without substantiation.    That is all Specialized Bicycle Components has done.

## V. THERE WERE NO NEGOTIATIONS

Specialized Bicycle Components makes much of the negotiations supposedly going on between it and Sports Innovations:

> The parties were in the midst of negotiations.   Specialized had extended an offer.

Memorandum in Support of Motion to Dismiss at 5-6.

Merely extending an offer is not negotiating.  The history of the what Specialized Bicycle Components calls negotiation is clear from the correspondence accompanying the Declaration of George Frazier.[12]  To summarize:

*October 13, 2000:* Specialized Bicycle Components demands that Sports Innovations cease using its mark:

> My firm represents Specialized Bicycle Components, Inc. ("Specialized").…. Specialized is the owner of a stylized S logo mark and holds a federal registration for this mark for bicyclist's shoes and clothing, namely, shorts, socks and jerseys ….

---

[12]    *See* Declaration of George Frazier, Item 1.

It has come to the attention of my client that Sports Innovations, Ltd. ("SI") is using an identical S logo as a trademark for portable drinking systems directed primarily to sports teams.... SI's adoption and use of S logo on **goods closely related to those of my client** and in the sports fields with **an overlap of potential customers**, is likely to cause confusion and mistake concerning the origin and association of the respective company's goods. [M]y client has the obligation under trademark law to prevent the use of "confusingly similar" marks in connection with the **same or related goods**.

My client demands that you immediately cease using S (Stylized) either alone or in association with other terms within two (2) weeks and not adopt any confusingly similar trademark for portable drinking systems.

(emphasis added).

*November 3, 2000:* Counsel for Sports Innovations does not receive the cease & desist letter until over two weeks later.  He immediately investigates the substance of the claims in the letter, determines they are baseless, and accordingly files suit in the Eastern District of Louisiana to avoid unnecessarily delaying resolution of opposing counsel's contentions. Sports Innovations seeks only declaratory relief because nothing else seems warranted in the absence of competition, common customers, or anything suggesting injury to Specialized Bicycle Components.

*November 6, 2000*:  Sports Innovations responds to the cease & desist letter by suggesting an amicable resolution to the dispute (although over-estimating both the time and cost of phasing out).

*November 14, 2000:*  Specialized Bicycle Components replies that it will allow Sports Innovations a six-month period within which to cease use of the stylized "S" mark.

*November 30, 2000*: Sports Innovations answers that:

Our letter of November 6, 2000 represented our most generous offer:  One designed solely to avoid litigation despite the obvious insubstantiality of your arguments.  If your client is truly unwilling to

defray the cost of changes made solely to accommodate its desires, then perhaps the best way to resolve matters is the enclosed Complaint.

***December 11, 2000:*** Specialized Bicycle Components sends Sports Innovations a copy of the California Complaint and notes:

> If you want to discuss a settlement involving an orderly phase-out by which your client can sell its existing inventory, let me know….

***December 15, 2000:*** Sports Innovations grants Specialized Bicycle Components a short extension of time within which to file an Answer so that it might extend a settlement offer.

***December 19, 2000:*** Specialized Bicycle Components writes that it will grant Sports Innovations a six-month phase-out period — the same offer it had already made.

***December 21, 2000:*** Sports Innovations answers:

> My client uses the trademark "***AQUALift***" for patented portable drinking systems sold to, *e.g.,* professional football teams. My client would most certainly object if your client infringed its patent or sold portable drinking systems under the mark "***AQUALift***". But that is hardly comparable to this situation. Your client's offer makes no more sense than a demand by my client that the stylized "S" mark be taken off your water bottles.

> My client is willing to send your client all revenues lost from every ***AQUALift*** drinking system sold to someone who mistakenly thought he was buying one of your water bottles. Despite the unlikelihood that anyone has ever been confused, my client remains ready to accommodate your client provided only that it defray the cost of doing so -- *e.g.*, costs and fees associated with finding and registering a new trade name, re-designing a web page; printing and designing new stationary, business cards, and brochures; deleting its trade name from advertisements; alerting customers of the name change…. Because of marketing decisions that must be made in the near future, my client feels any changes must be made sooner rather than later. For that reason, the six-month phase-out period you offer has no value.

*December 21, 2000:*   Later that afternoon, Specialized Bicycle Components informs Sports Innovations by facsimile that it had filed the Motion before the Court.

Specialized Bicycle Components never negotiated, unless that word comprehends repeatedly offering the same terms.

## VI. CONCLUSION

Specialized Bicycle Components invokes the Court's equitable powers and requests that it exercise its discretion and transfer the case before it to California. But the case in California is based on false premises. Specialized Bicycle Components has omitted essential elements of its claims and made misleading allegations in its California suit. For example, Specialized Bicycle Components alleges:

> Defendant Sports Innovations uses an identical stylized S logo mark for its portable drinking systems which are marketed and sold primarily to sports teams and/or persons or entities engaged in sporting activities.

Complaint ¶11.

Sports Innovations neither uses a stylized "S" on its portable drinking systems nor sells to "persons engaged in sporting activities". Specialized Bicycle Components was so informed before it filed suit, but chose to make the claim anyway.

The real point of the California case is to expand the scope of a federal registration beyond the goods identified in the Applications to the United States Patent and Trademark Office and the ensuing Certificates of Registration. Certificates of Registration cover only the goods listed in the Certificate. *E.g., Jeld-Wen, Inc. v. Dalco Industries, Inc.,* No. 99-1005 (8th Cir. June 15, 1999) [1999 WL 1024002, *2]; *Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1395-96 (3d Cir. 1985). This

is an impermissible attempt to achieve a perpetual monopoly over the use of a stylized "S" mark in connection with *any* goods or services.

Specialized Bicycle Components does business nationwide through franchises and internet sales. Sports Innovations does not. It is a local company with customers located across the country. It has one office (in Jefferson Parish) and 5 distributors, none of which are located in California. Sports Innovations asks that it not be compelled to litigate in the jurisdiction of Specialized Bicycle Components' choosing, particularly because (a) Sports Innovations is the senior user, and thus Specialized Bicycle Components has no trademark rights to protect, (b) Specialized Bicycle Components never negotiated seriously, (c) the first suit was filed in the Eastern District of Louisiana, and (d) the claims in the California suit are meritless and asserted solely to harass Sports Innovations.

RESPECTFULLY SUBMITTED,

**LEMLE & KELLEHER, L.L.P.**

GEORGE FRAZIER, Bar No. 5836(T.A.)
601 Poydras Street, 21st Floor
New Orleans, LA 70130
Telephone: (504) 586-1241
Attorneys for Sports Innovations, Ltd.

## CERTIFICATE OF SERVICE

I certify that copies of the **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER** have been served on local counsel by hand delivery and on lead counsel by Express Mail in envelopes addressed on this 23rd day of January, 2001 as follows:

Mr. David Henry Dolkas
Gray Cary Ware & Freidenrich LLP
400 Hamilton Avenue
Palo Alto, CA 94301-1809

-and-

Mr. Thomas M. Young
Turner, Young, Hebbler & Babin
424 Gravier Street
New Orleans, LA 70130

**GEORGE FRAZIER**

241232

241232-1

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED